IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Applicant,<br><br>　　v.<br><br>ABM JANITORIAL-MIDWEST, INC.,<br><br>　　　　Respondent. | No. 09 C 4707 |

**MEMORANDUM OPINION AND ORDER**

Before me is an application by the United States Equal Opportunity Commission to enforce an administrative subpoena it issued to ABM Janitorial-Midwest, Inc., a putative successor to Lakeside Building Maintenance, Inc., in the course of an investigation prompted by a charge of national origin discrimination against Lakeside. For the reasons that follow, I decline to enforce the subpoena.

I.

On November 13, 2000, a Lakeside employee named Lue Bowens filed a charge of discrimination against Lakeside. The particulars of her charge were as follows:

> I.　I was hired by Respondent[1] in 1977 as a Janitor. My most recent superivsor (sic) has continually conducted

---

[1]Although ABM Janitorial-Midwest is the respondent in this enforcement action, I follow the parties' lead in referring to that party as "ABM." Any references to "Respondent" in this order refer to Lakeside, the respondent in the original charge.

> monthly employee meetings in a language which I and another co-worker do not understand. The content of these meetings has rarely been translated for me.
>
> II. I believe I have been discriminated against due to my national origin, non-Polish, in violation of the Civil Rights Act of 1964, as amen[ded].

In the course of investigating the Bowens charge, the EEOC uncovered certain facts that prompted it to expand its inquiry beyond the scope of Bowens' narrow charge to determine whether Lakeside's hiring and job assignment practices reflected a general pattern of discrimination. In connection with its expanded investigation, on August 5, 2002, the EEOC issued an administrative subpoena to Lakeside seeking to depose seven Lakeside employees. *See EEOC v. Lakeside Building Maintenance, Inc.*, 255 F.Supp.2d 871 (N.D. Ill. 2003)("*Lakeside*"). Lakeside refused to comply with the subpoena on the ground that it sought information that was irrelevant to the underlying charge. *Id.* In January of 2003, EEOC applied to this court for an order to enforce the subpoena, which I granted. *Id*.

By the time the EEOC issued its subpoena to Lakeside, a substantial portion of Lakeside's assets had been acquired by ABM.[2] Nevertheless, Lakeside was the only respondent to the 2002 subpoena and the 2003 enforcement action. According to Lakeside's response

---

[2]The parties describe a multi-step transaction involving various entities that were created, acquired, or merged over the course of several years, but my decision does not turn on the precise nature of this series of transactions.

in the enforcement action, at that time the company had "approximately 3,500 active employees in Illinois and an additional 2,000 employees in six other states." Resp.'s Opp. to EEOC's App. For Order to Show Cause in No. 03 C 564 at 1 (Docket No. 5).[3] After I ordered Lakeside to comply with the EEOC's subpoena, Lakeside provided the EEOC with hiring, work location and other information about every person who worked for Lakeside from January 1, 1998 through July 12, 2002, when Lakeside sold its assets to ABM.[4]

In late 2006 or January of 2007, the EEOC sent a request for information to ABM, seeking databases of information about ABM employees from the period beginning July 12, 2002 (the closing date of ABM's purchase of Lakeside's assets) to the date of the request. ABM refused to provide the requested information, and on March 21, 2007, the EEOC issued a subpoena to ABM seeking, with respect to each employee in ABM's Chicago and suburban facilities between July 12, 2002 and March 12, 2007, the employee's name; race and national

---

[3]Because neither the EEOC nor Lakeside made any mention during the 2003 enforcement action of Lakeside's asset sale to ABM, and the parties do not address this question in the present action, I am unsure whether the 3,500 employees referenced in Lakeside's 2003 brief includes any employees who were transferred to ABM as part of the asset sale, or whether that number refers to employees who remained with Lakeside after the sale.

[4]Information about Lakeside's compliance comes from ABM's opposition in the current action, which ABM asserts on information and belief, based on its communications with Lakeside's counsel. I presume, based on the EEOC's silence on this issue in its reply, that ABM's assertion is accurate.

3

origin; date of hire (as a non-permanent employee); date promoted into permanent position; work address; current employment status; date and reason for separation (if applicable); and last known address and telephone number. The EEOC also sought, for each individual who had applied for a position at ABM during the same time period, the employee's name; national origin; race; date of application; application; referral source; position sought; reason person was or was not selected for hire; date of hire if applicable; and name, race, and national origin for each person who made a decision to select or deny hire. In addition to the foregoing information about employees and applicants, the EEOC sought, all for the period from July 12, 2002 to March 12, 2007, ABM's annual EEO-1 reports and various other categories of information relating to ABM's organizational structure (including the name, race, national origin and job titles of the individuals responsible at various levels of authority); the geographical areas of ABM's recruitment and hiring; ABM's hiring and recruitment policies; job vacancies at ABM; new contracts acquired by ABM; and employee information (including name, date of hire, position, permanent or non-permanent status, national origin, and race) for each employee acquired with each new contract.

ABM petitioned to revoke the subpoena on March 28, 2007. Two years later, on March 26, 2009, the EEOC denied the petition. ABM refused to comply with the subpoena, and this action followed.

II.

The role of federal courts in enforcing administrative subpoenas issued by the EEOC is "sharply limited." *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987). "As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena." *Id.* (citing *EEOC v. Illinois State Tollway Auth.*, 800 F.2d 656, 658 (7th Cir. 1986); *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 783 (7th Cir. 1983), cert. denied, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed. 456 (1984)). The first and the third prongs of this inquiry are related in that the EEOC's investigative authority "is not plenary": the agency is entitled only to information that is "relevant to the charge under investigation." *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 652 (7th Cir. 2002) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984)). This limitation is grounded in the language of 42 U.S.C. § 2000e-8(a)(EEOC shall have access to information that "relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.")

The burden of proving relevancy is "not particularly onerous," *United Air Lines*, 287 F.3d at 652, and courts generally grant the EEOC access to any material "that might cast light on the allegations against the employer." Id., quoting *Shell Oil*, 466

5

U.S. at 68-69. Nevertheless, the "might" in the *Shell Oil* Court's analysis is "an indication of a realistic expectation rather than an idle hope that something may be discovered," *United Air Lines*, 287 F.3d at 653, and the relevancy requirement is designed to prevent fishing expeditions by the EEOC. *Id.*, quoting *United States v. Harrington*, 388 F.2d 520, 524 (1968).

ABM opposes enforcement of the EEOC's subpoena on many grounds. First, ABM argues that the subpoena exceeds the scope of EEOC's investigative authority because 1) the information sought is not reasonably relevant to the underlying charge; and 2) ABM is not a party to the underlying charge and therefore is not subject to EEOC's subpoena. Regarding these issues, the EEOC asserts that ABM is collaterally estopped by my decision in *Lakeside* from raising the issue of relevance, and argues that in any event, materials relating to ABM's hiring and recruitment practices are relevant to the charge because they "shed light" on the discrimination charged. The EEOC further argues that its subpoena authority extends to third parties, and that ABM's status as a "potential successor" to Lakeside supports EEOC's entitlement to the information it seeks.

The EEOC's collateral estoppel argument on this issue does not require extensive discussion. While it is true that I concluded in *Lakeside* that the materials sought in the EEOC's administrative subpoena to Lakeside (deposition testimony from seven Lakeside managers on the issue of Lakeside's hiring and recruiting

6

practices) were relevant to the Bowens charge of national origin discrimination, that determination cannot plausibly be interpreted as having settled the issue of whether the vastly more expansive and diverse collection of materials sought in the EEOC's administrative subpoena to ABM, who, it bears noting, was never Ms. Bowens' employer, are relevant to the underlying charge. To argue that the "relevance" issue was previously decided, without any serious discussion of how the specific information sought in each case relates to the charge at issue, is well-nigh meaningless. Relevance, broadly speaking, must be decided in every action of this nature, as the legal standard discussed above shows. The EEOC's generic description of the subpoenas in both cases as seeking "information regarding hiring and job assignment" obscures the substantial differences in the nature and scope of the information requested and, at least as importantly, the fact that the first subpoena was directed to the charging party's employer, while the subpoena now under scrutiny seeks information from a party that never had any employment relationship with the charging party. In short, my decision in *Lakeside* patently did not resolve whether the information sought in the EEOC's subpoena to ABM is relevant to the underlying charge.

Turning now to the substantive issue of relevance, there is no question that EEOC is entitled to investigate employment practices "other than those specifically charged." *United Airlines*, 287 F.3d at 653 (citing *Blue Bell Boots, Inc., v. EEOC*, 418 F.2d 355, 358

7

(6th Cir. 1969)). Moreover, as one court in this district has observed, Courts of Appeals typically construe charges filed by private claimants broadly, affording the EEOC substantial latitude in pursuing civil actions that deviate from the original claim. *EEOC v. Tempel Steel Co.*, 723 F.Supp.1250, 1252 (N.D. Ill. 1989)(citing, *inter alia*, *EEOC v. General Electric Co.*, 532 F.2d 359, 365-66 (4th Cir. 1976)(allowing an action charging sex discrimination in *hiring* discovered during the investigation of a claim of racially discriminatory promotion and transfer practices) and *Equal Employment Opportunity Commission v. Brookhaven Bank & Trust Co.*, 614 F.2d 1022 (5th Cir.1980) (claim of discriminatory hiring practices supported an EEOC action charging segregated job classifications)). As these examples demonstrate, "[t]he EEOC's role in the claims process is to investigate a claim thoroughly and reasonably and remedy *any* unlawful discrimination that it uncovers." *Tempel Steel*, 723 F.Supp. 1250 at 1253 (original emphasis).

Understandably, the EEOC emphasizes these and other authorities that confirm the EEOC's broad investigatory powers, as well as the agency's authority to expand an investigation stemming from a particular charge into like and related conduct to determine whether the practice alleged in the charge may be part of a pattern or practice of discrimination by the employer. Nevertheless, *United Air Lines* makes clear that district courts are not

8

authorized to enforce administrative subpoenas based on a construction of the statutory relevance so broad as to render the requirement a "nullity." *United Air Lines*, 287 F.3d at 654. "In assessing the relevance of the information requested by the subpoena," I must begin by examining "the nature of the charge." *Id*. In her charge of discrimination, Ms. Bowens alleged that she suffered national origin discrimination because her supervisor routinely conducted monthly employee meetings in a language she could not understand. On its face, this charge relates narrowly to the particular practice of a particular supervisor. While it is true that the EEOC may reasonably look outside "that employing unit or work unit from which came the decision of which the individual complainant complains...to illuminate the general policies bearing on the complainant's situation," *Id.*, quoting *EEOC v. Packard Electric Division General Motors Corporation*, 569 F.2d 315, 318 (5th Cir. 1978), EEOC cites no authority entitling it to look to the practices of a historically unrelated entity to "illuminate" the policies to which the charging party was subject as Lakeside's employee.

What distinguishes this case significantly from those on which the EEOC relies is that in this case, the EEOC seeks not only information about different *employment practices* from those alleged in the charge, but also about information about the practices of different *employers*. This distinction cannot be ignored,

9

particularly in light of the oft-cited phrase used by the *Shell Oil* Court when it defined the permissible scope of the EEOC's investigative authority as extending only to information "that might cast light on the allegations *against the employer*." *Shell Oil*, 466 U.S. at 68-69. It is easy to see how information about a particular employer's hiring and job placement practices might shed light on the issue of whether another practice imputed to the employer has a discriminatory motive or effect, as was the situation in *Lakeside*. It is much harder to see how the hiring and job placement practices of an entity that, although presently related to the charging party's former employer through a series of corporate transactions, was, at the time the charge was brought and for several years thereafter, an unrelated competitor of the employer named in the charge.

ABM states, and the EEOC does not appear to dispute, that during the period for which the EEOC seeks information, there were over 12,000 employees in ABM's employment database. Although it is unclear how many of these employees were historically employed by Lakeside, some--possibly many--were not.[5] Information relating to employees other than those previously employed by Lakeside, or to

---

[5]Based on ABM's uncontested explanation of the corporate transactions that occurred during the relevant period, the subpoena appears to seek information both about ABM employees who were formerly employed by Lakeside and ABM employees who never had any employment relationship with Lakeside, and were employed by a company known as ABMCo Illinois, which competed with the ABM entity that "inherited" the Lakeside employees for some time.

the hiring and job placement practices of their (non-Lakeside) employer(s), cannot possibly shed any light whatsoever on whether the practice imputed to Lakeside in the underlying charge was part of a broader pattern of discrimination.[6]

Nor does the EEOC's theory of successor liability entitle it to the information it seeks. Setting aside the factual issue of whether ABM may appropriately be considered Lakeside's successor (a question that is premature at this stage), the Seventh Circuit has made clear that the conduct of a putative successor is irrelevant to the application of the theory. As the court observed in *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740 (7th Cir. 1985), after a lengthy discussion of the policies favoring successor liability in employment discrimination cases, "liability is imposed on the successor for the acts, intentional or otherwise, of a predecessor solely because the policies of the laws at issue are substantially promoted. The courts specifically recognize that the successor is an *innocent* party." *Id.* at 747 (original emphasis). Accordingly, the EEOC cannot plausibly claim that the possibility that ABM might ultimately be liable, as Lakeside's successor, for discrimination

---

[6]My conclusion that the information sought is not reasonably relevant to the underlying charge renders unnecessary a separate discussion of whether the EEOC has authority to subpoena information from third parties. The EEOC itself acknowledges that its subpoena power flows from 42 U.S.C § 2000e-8(a), the same section that imposes the relevancy requirement.

allegedly practiced by Lakeside, entitles it to information about ABM's own employment practices.[7]

Finally, even if I concluded that the information requested were sufficiently relevant to the underlying charge to satisfy the statutory requirement of relevance, any minimal relevance would be outweighed by the significant burden of compliance on ABM. The EEOC relies primarily on *United Air Lines* as support for its argument that compliance would not be unduly burdensome, and quotes in particular the court's observation that the burden on an employer opposing enforcement is high, and that "[c]onclusory allegations of burdensomeness are insufficient." Setting aside the fact that ABM, though the respondent in this action, was not the charging party's employer at all, ABM's allegations of burdensomeness are far from conclusory. To the contrary, ABM explains in substantial detail the complex process through which its employees--many of whom are organized in a multi-employer bargaining unit and work under a collective bargaining agreement linking an individual's employment to a particular building, rather than to a particular employer--are hired or promoted. To be sure,

---

[7]The EEOC does not appear to take the position that it has been unable to obtain information about Lakeside's employment practices from Lakeside (a company that apparently continues in operation to this day, although under a different name, *see* Exh. 7 to ABM's Mem. in Opp. To EEOC's Motion to Enforce Subpoena), nor has it sought to limit its subpoena to ABM to information relating to the employees or employment practices of the pre-merger Lakeside.

the complexity of employment and record keeping practices in the industry does not excuse ABM from compliance with reasonable requests for information. But in balancing the EEOC's legitimate interest in obtaining what is, at best, marginally relevant information against the substantial challenges of compliance (which also include the fact that the request dates back seven years comprising an unexplained two-year delay between the EEOC's decision not to revoke the subpoena and its initiation of the present action), I conclude that the EEOC's voluminous request is overly burdensome.

For the foregoing reasons, the EEOC's subpoena to ABM cannot be enforced in its current form.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 2, 2009